Edward S. CANTON and Sigfrid Canton, Plaintiffs,

v.

UNITED STATES of America, Defendant.

No. 4-66-Civ. 389.

United States District Court
D. Minnesota,
Fourth Division.

March 22, 1967.

Raymond V. Hedelson and Kittler & Hedelson, Minneapolis, Minn., for plaintiffs.

John G. Milano, Tax Division, Dept. of Justice, Washington, D. C., for defendant.

## MEMORANDUM

LARSON, District Judge.

Taxpayers Edward S. Canton and Sigfrid Canton instituted this action for refund of income taxes paid for the years 1954 and 1955. In October, 1965, they filed a claim for refund and, upon disallowance, commenced this suit in November, 1966. Defendant United States has moved to dismiss the action as barred by the statute of limitations. The pertinent statute is 26 U.S.C. § 6511(a), (b):

"(a) Period of limitation on filing claim.—Claim for credit or refund of an overpayment of any tax imposed by this title in respect of which tax the taxpayer is required to file a return shall be filed by the taxpayer within 3 years from the time the return was filed or 2 years from the time the tax was paid, whichever of such periods expires the later, or if no return was filed by the taxpayer, within 2 years from the time the tax was paid."

"(b) Limitation on allowance of credits and refunds.—

(1) Filing of claim within prescribed period.—No credit or refund shall be allowed or made after the expiration of the period of limitation prescribed in subsection (a) for the filing of a claim for credit or refund, unless a claim for credit or refund is filed by the taxpayer within such period."

Under these sections, a timely claim for refund is a condition precedent to institution of suit and recovery of a refund. Since the taxpayers' claim in this case was filed more than 3 years from the time the returns were filed, the United States contends the action should be dis-

missed. For the reasons stated below, the defendant's motion must be granted.

 When the taxpayers filed their returns for 1954 and 1955 no deductions were taken for legal and accounting fees incurred in the unsuccessful defense of a criminal action arising out of business activities. Under the prevailing law prior to 1966 such expenses were non-deductible. See Bell v. Commissioner of Internal Revenue, 320 F.2d 953 (8th Cir. 1963). By its decision in Commissioner of Internal Revenue v. Tellier, 383 U.S. 687, 86 S.Ct. 1118, 16 L.Ed.2d 185 (1966), the Supreme Court overturned prior precedents and ruled that such expenses are deductible. The Supreme Court's decision was handed down on March 24, 1966, and affirmed the Second Circuit's decision of February 16, 1965. The claim for refund in this case was filed after the Court of Appeals decision. Taxpayers seek to avoid the effect of § 6511(a) on the theory that the change in law announced by the Second Circuit created a constructive overpayment of tax as of the date of its decision. Under this theory the time for submitting a claim for refund would commence no earlier than February 16, 1965, and, therefore, the refund claim in the instant case would be timely. Alternatively, taxpayers argue that their returns were filed under a mutual mistake of law which did not become evident until the *Tellier* decision. Before discovery of the mistake, taxpayers contend, the Government held the overpayment on deposit and, under equitable principles, should now be required to make restitution.

In support of their constructive overpayment theory, taxpayers rely upon Smith v. United States, 304 F.2d 267 (3d Cir. 1962); Lorenz v. United States, 296 F.2d 746, 155 Ct.Cl. 751 (1960); and Zacks v. United States, 280 F.2d 829, 150 Ct.Cl. 814 (1960), although recognizing and citing decisions to the contrary in Tobin v. United States, 264 F.2d 845 (5th Cir. 1959), and United States v. Dempster, 265 F.2d 666 (6th Cir. 1959). All of these cases involve a 1956 statute

with a retroactive provision. In the Internal Revenue Code of 1954, Congress provided for the taxation at capital gain rates of royalty income from the transfer of patent rights. The 1939 Code did not have a similar provision, but a tax court decision in 1946 held that such income could be treated as a capital gain, rather than ordinary income. Initially the Commissioner acquiesced in the decision, but withdrew the acquiescence on May 31, 1950. It was against this background that Congress enacted the retroactive legislation in 1956. This history is summarized in Lorenz v. United States, supra:

> "So, payments under exclusive licenses received after the Myers decision in 1946 were taxable as capital gains; but after May 31, 1950, they were taxable as ordinary income; and then after the enactment of the Internal Revenue Code of 1954, they were again taxable as capital gains.

> "To remedy this anomaly, Congress on June 29, 1956, passed P.L. 629 (70 Stat. 404), which amended the Internal Revenue Code of 1939 to conform to Section 1235 of the Internal Revenue Code of 1954, and made its provisions applicable to all payments received after May 31, 1950." 296 F.2d at 747.

Seeking refunds on the basis of this statute, taxpayers were met with the contention that their actions were barred for failure to file claims for refund within the limitation period. The *Zacks* and *Lorenz* cases held that the statute gave taxpayers a new right and thus the statute did not begin to run until after it was enacted. The *Smith* case accepted this theory, arguendo, but held that taxpayer's refund claim was untimely even if the limitation period commenced upon passage of the Act. The *Tobin* and *Dempster* decisions were adverse to the taxpayers. Those cases held that the statute did not create a new right, but merely confirmed an existing right and thus the ordinary statute of limitations was applicable. The result in the latter two cases subsequently proved to be cor-

rect. In United States v. Zacks, 375 U.S. 59, 84 S.Ct. 178, 11 L.Ed.2d 128 (1963), the Supreme Court reversed the Court of Claims and held that Congress did not intend to suspend the statute of limitations by virtue of the retroactive statute. Reviewing other legislation in which Congress did include express provisions reopening barred years, the Court stated, "It is abundantly clear that Congress is aware of the limitations problem as it affects retroactive tax legislation." After reviewing the history and background of the statute in question, the Court indicated that Congress was principally concerned with pending cases challenging the correctness of the Commissioner's position for years after May 31, 1950, rather than with cases barred by the limitation period. The taxpayers argued that if the period of limitation were not held to be waived, opposition to the Commissioner's ruling would be given a premium. The Court was not persuaded.

> "In any event, this problem always attends retroactive legislation of this sort, and acceptance of the taxpayers' argument would lead to the automatic waiver of the statute of limitations in every case. Whether or not this should be done is a matter for Congress to decide. Where Congress has decided otherwise, this Court has but one course." 375 U.S. at p. 70, 84 S.Ct. at p. 184.

In the course of its opinion the Court noted the conflicting lower court decisions on the statute in suit and also the decision in Hollander v. United States, 248 F.2d 247 (3d Cir. 1957). Taxpayers in the instant case also rely upon the *Hollander* decision which involved a retroactive estate tax statute. The Supreme Court's disposition of the *Zacks* case undermines any authority *Hollander* may have had.

■■ In their brief taxpayers state, "There is no good reason for distinguishing between a retroactive change of statute and a change of law effected by judicial decision, which by its very nature is retroactive unless the Court provides for some other application." If, as the *Zacks* case indicates, retroactive legislation cannot suspend the statute of limitations absent an express provision to that effect, *a fortiori* a judicial decision cannot operate to enlarge the period of limitation. It is true, as plaintiffs suggest, that judicial decisions usually operate retroactively unless the Court specifically determines to give them only prospective application. However, a decision does not have retrospective effect ad infinitum, even though a significant change of law is involved. The applicable statute of limitations operates to curtail the effect of judicial pronouncements as to matters occurring prior to the decision. Illustrative are cases subsequent to the Supreme Court's "change of law" decision in James v. United States, 366 U.S. 213, 81 S.Ct. 1052, 6 L.Ed.2d 246 (1961). There the Court held that embezzled funds are includable in the embezzler's gross income and subject to tax. The decision overruled Commissioner of Internal Revenue v. Wilcox, 327 U.S. 404, 406, 66 S.Ct. 546, 90 L.Ed. 752 (1946), which had ruled to the contrary. The interesting aspect of *James* was the Court's indication that wilfulness probable could not be shown in cases arising prior to the decision. Thus the Court intimated that where wilfulness was an issue, such as in tax fraud cases, the decision was to operate only prospectively. In civil tax cases where the Government sought to assess a deficiency against embezzlers for tax years prior to *James*, the decision has been held to operate in the ordinary retroactive manner. See Geiger's Estate v. Commissioner of Internal Revenue, 352 F.2d 221 (8th Cir. 1965), cert. denied 382 U.S. 1012, 86 S.Ct. 620, 15 L.Ed.2d 527 (1966). However, to give ordinary effect to an overruling decision such as *James* means that the statute of limitations continues to bar claims beyond its cut-off date. Although the embezzlements in *Geiger's Estate* occurred over a period of thirty years, the applicable statute of limitations (26 U.S.C. § 6501(e) (1) (A)) allowed the Government to recover taxes for only six of

those years. The Court said, "It provides small comfort to the taxpayers, of course, but one may note that deficiencies due to like misappropriations in the years prior to 1954 are in fact barred." 352 F.2d at 232. In other post-*James* cases the statute of limitations has been applied to segregate barred years from those for which the Government could still seek recovery. See United States v. Siano, 356 F.2d 927 (2d Cir. 1966); Adame's Estate v. Commissioner of Internal Revenue, 320 F.2d 811 (5th Cir. 1963).

■ Harsh though the rule may be, taxpayers in the instant case are likewise precluded from asserting recovery for years barred by § 6511(b). While the courts have power to give a decision only prospective effect, they have no authority to suspend a statute of limitations enacted by Congress. Plaintiffs in the instant case are in a position similar to taxpayers in Kaltreider Construction, Inc. v. United States, 303 F.2d 366 (3rd Cir.), cert. denied 371 U.S. 877, 83 S.Ct. 148, 9 L.Ed.2d 114 (1962). There the corporate taxpayer filed an amended return in 1956 with respect to taxes for the year 1952. Additional income and additional tax were reported in the amended return, but two years later a Court of Appeals decision held, in a case involving individual stockholders, that the additional income and tax should have been reported and paid by the individuals. The corporation then filed a claim for refund. Holding that the time began to run from the original, rather than the amended, return the Court found the refund claim untimely. The taxpayers argued that any claim for refund prior to the pertinent decision would have been untimely, but the Second Circuit indicated the hardships created by the limitation period can only be alleviated by Congress.

In *Tellier*, the overruling decision giving rise to the instant case, the Supreme Court said:

"No public policy is offended when a man faced with serious criminal charges employs a lawyer to help in his defense. That is not 'proscribed conduct.' It is his constitutional right. * * * In an adversary system of criminal justice, it is a basic of our public policy that a defendant in a criminal case have counsel to represent him." 383 U.S. at 694, 86 S.Ct. at 1122.

Plaintiffs cite Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), and note that that landmark decision guaranteeing all defendants in felony cases the right to counsel, has been applied retroactively. To refuse the same retroactively to *Tellier* in no way dilutes *Gideon*. Moreover, *Gideon* operates retroactively ad infinitum because no statute of limitations operates to limit habeas corpus petitions making a collateral attack upon a prior conviction. In taxpayers' case, however, Congress had adopted a statute of limitations which must be given effect.

Nor is this Court convinced that "mistake of law" furnishes a basis for extension of the statute of limitations. Logan Lumber Co. v. Commissioner of Internal Revenue, 365 F.2d 846 (5th Cir. 1966), and Brast v. Winding Gulf Colliery Co., 94 F.2d 179 (4th Cir. 1938), relied upon by taxpayers, are distinguishable. Plaintiff in the latter case duly filed returns for the years 1919 and 1920. In 1925 a deficiency determination was made and taxpayer then instituted suit in the Tax Court for review of this determination. Before the case was heard the Tax Court considered two similar cases and decided the issue adversely to the taxpayers. On the basis of these decisions, taxpayer in the *Brast* case entered into a stipulation with the Government for payment of the deficiency. The Court's Order pursuant to the stipulation was entered on December 8, 1926, and taxpayer then paid the tax. Subsequently the Tax Court decisions which induced the stipulation were reversed. On November 8 and 18, 1929, taxpayer filed claims for refund and brought suit in 1931 after the claims were rejected. The Government argued that the previous stipula-

tion precluded suit, but the Fourth Circuit ruled that taxpayer could be relieved of its effect as it was entered into under a mistake of law. Nothing in the Court's opinion refers to the statute of limitations, but it can be assumed that a timely claim was filed. Under § 284(6) (1) of the Revenue Act of 1926, 44 Stat. 9 (February 26, 1926), taxpayer had at least three years from the date of payment of the tax in which to file a claim for refund. If the deficiency were paid on the date of the Court's Order, December 8, 1926, taxpayer's refund claim was timely.

In the *Logan* case the statute of limitations apparently was satisfied. While the case was before the Tax Court a stipulation was agreed upon concerning the nondeductibility of legal fees. The case went up on appeal and after argument the *Tellier* decision was announced. Remanding the question of the deductibility of legal fees, the Court held taxpayer could be relieved of the prior stipulation on the grounds that it was provoked by a mutual mistake of law. Unlike the present case, the tax years in *Logan* were still open and were being contested at the time *Tellier* was decided. Recently, in Transport Mfg. & Equip Co. v. Commissioner, 374 F.2d 173 (8th Cir., March 10, 1967), the Court also applied *Tellier* to pending litigation.

In all of the above cases the tax years in question were not barred by the statute of limitations when the change of law occurred. Relieving a taxpayer from a stipulation, a consensual agreement, is far different from relieving taxpayers from the bar of a statute of limitations, a legislative mandate. By agreement the parties could not extend the statute of limitations; nor may this Court do so by judicial fiat.

Defendant's motion to dismiss must, therefore, be granted.